**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ANTHONY D. RICHARDSON,

   Petitioner,

v.                                              Civil Action No.:  ELH-21-24

WILLIAM BOHRER,
  MARYLAND ATTORNEY GENERAL,

   Respondents.

**MEMORANDUM OPINION**

Petitioner Anthony D. Richardson, a Maryland prisoner, has filed a Petition For Writ of Habeas Corpus. ECF 1 (the "Petition"). Respondents are William Bohrer, Acting Warden, and Brian Frosh, the Maryland Attorney General. They filed an answer to the Petition, asserting that the claims are without merit. ECF 7; ECF 9. Their submissions include several exhibits. Petitioner has not replied.[1]

No hearing is required. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons that follow, I shall deny the Petition. And, a certificate of appealability shall not issue.

**I.  Background**

Petitioner was charged by the State of Maryland with first degree burglary, armed robbery, theft, use of a firearm, first degree assault, and reckless endangerment for an offense occurring in

---

[1] In my Order of January 13, 2021, I advised that Petitioner had 28 days to reply to the answer. ECF 2, ¶ 3. Petitioner moved for default on May 25, 2021, claiming that respondents had not answered. ECF 5. However, I had granted an extension request by Order of April 28, 2021. ECF 4.

the early morning hours of November 29, 2013. ECF 7-1 at 3. Following a jury trial in the Circuit Court for Anne Arundel County in 2015 (ECF 7-1 at 13), Richardson was convicted of robbery with a dangerous weapon, reckless endangerment, theft of property valued from $1,000 to under $10,000, and conspiracy to commit robbery with a dangerous weapon. ECF 9-4 at 15-17. The evidence presented at trial is outlined below.

Evaristus Nyambi, an immigrant from Cameroon, testified that on the evening of November 28, 2013, he was entertaining a woman, Regina Jenkins, in his apartment. ECF 9-1 at 144-47. Late in the evening, Ms. Jenkins indicated she wanted to go home and called a cab to pick her up at Mr. Nyambi's apartment in Anne Arundel County. *Id*. at 147-48. The two had been waiting for the cab inside Mr. Nyambi's apartment. However, Ms. Jenkins said she wanted to wait outside. *Id*. at 148. As she opened the door to leave, two masked men, one of whom was brandishing a handgun, entered Mr. Nyambi's apartment, and Ms. Jenkins simply walked through the door allowing the men to enter. *Id*. at 148-49.

Mr. Nyambi was ordered to lay face down on the floor as a gun was pointed to his head and the men began demanding money. *Id*. at 149. When Mr. Nyambi told them he had no money, one of the men began ransacking the apartment and taking items away while the other pointed a gun at Mr. Nyambi. *Id*. The assailants attempted to steal Mr. Nyambi's 70-inch television, but then determined it was too cumbersome for one person to carry, so the gunman left his post to assist his partner with carrying the television out of the apartment. *Id*. At that point, Mr. Nyambi ran from the apartment, spotted a cab pulling into the parking lot, begged the driver to use his phone, and called the police. *Id*.; *see also* ECF 9-1 at 178 (testimony of cab driver Remy Maurice). Mr. Nyambi could not identify the men who robbed him, as both were wearing ski masks. *Id*. at 171 (cross-examination of Nyambi).

Police arrived and took Mr. Nyambi's initial statement.  ECF 9-1 at 182-83.  Corporal Greg Pilkerton, an Anne Arundel County police officer trained in handling police canine, conducted a tracking search outside of Mr. Nyambi's apartment in the area where the two men had fled.  *Id*. at 194.  During that process, Pilkerton and his canine partner found the 70-inch television that had been removed from Mr. Nyambi's apartment.  *Id*. at 204-05.  The television screen was shattered and a small amount of blood was observed on the television.  ECF 9-2 at 21.  A swab of the blood stain was collected by crime technician Katie Ladue.  ECF 9-2 at 22.

Detective Jeff Golas testified for the State and explained that he started his investigation into the crime by speaking with Mr. Nyambi, who advised that his wallet, which contained his credit cards, had been taken during the home invasion.  ECF 9-2 at 34.  Detective Golas asked Mr. Nyambi to contact the bank that issued the credit card to determine if any new charges had appeared since the robbery.  *Id*.  When Mr. Nyambi called, he discovered fraudulent charges had been made for a purchase on Zappos.com.  *Id*. at 36-37.

Detective Golas subpoenaed records from Zappos.com and retrieved the IP address from which the online order on Mr. Nyambi's credit card originated.  ECF 9-2 at 37-38.  Golas explained that the IP address is "a unique identifier for internet addresses."  *Id*. at 38.  Golas also determined that the Zappos order was placed by Richardson's fiancé, Ain Joseph, at approximately 2:30 a.m. on November 28, 2013.  *Id*. at 39-40.  Golas next determined that the IP address was a "Verizon file" and obtained a subpoena for the subscriber's name associated with the specific IP address.  *Id*. at 40.  Golas received information from Verizon in response to the subpoena, indicating that the physical address for the IP address was located at 3928 Suitland Road, Apartment 203 in Suitland, Maryland.  *Id*. at 42.  Richardson and Ms. Joseph were the leaseholders for the apartment.  *Id*. at 43.

A search warrant for Richardson's apartment was executed on December 6, 2013. When police arrived, the apartment was unoccupied but contained evidence that its occupants had recently left. ECF 9-2 at 43. During the search of the apartment, the police recovered Richardson's driver's license, as well as receipts from the apartment complex and mail bearing his name. *Id*. at 48-49. In addition, a gun was recovered from the apartment. *Id*. at 53-54.

Golas explained that Richardson's vehicle was located in the parking lot of the apartment complex, which was identified by the tag number. ECF 9-2 at 55; 57. When Golas looked into the vehicle he could see, in plain sight, two cell phones and two black ski masks. *Id*. at 59-61. One of the cell phones recovered from Richardson's car was traced back to Regina Jenkins. *Id*. at 61-62. The contact list in Ms. Jenkins' cell phone contained a contact entitled "my boo" with the cell phone number associated with that contact belonging to the other cell phone recovered from Richardson's car. *Id*. at 62-63.

Text messages sent to Ms. Jenkins' phone were recovered, some of which were read into the record. *Id*. at 64; 75-76. The records for Ms. Jenkins' phone and the other cell phone found in Richardson's car showed a total of 58 phone calls and text messages between the two phones. *Id*. at 76. Around the time Mr. Nyambi's home was invaded, there was "a phone call a couple of minutes after Ms. Jenkins call[ed] for a taxi cab" to the other cell phone found in Richardson's car "and then there's no other contact for 12 hours." *Id*. at 77.

Golas testified that the property stolen from Mr. Nyambi's apartment was determined to be worth $5,000. ECF 9-2 at 80. Through his testimony it was also demonstrated that the apartment Richardson leased with his fiancé was a 25 to 30-minute drive from Mr. Nyambi's address. *Id*.

In addition, Golas executed a search and seizure warrant to obtain a DNA sample from Richardson. ECF 9-2 at 78. Emilie Dembia, a forensic chemist who was qualified as an expert in forensic serology and DNA analysis (*id*. at 97-99), testified that the blood found on the television stolen from Mr. Nyambi's apartment matched the known DNA from Richardson. *Id*. at 104-05. Ms. Dembia explained that if the DNA of 680 quadrillion unrelated people was compared to the sample collected from the television, they would expect to get the same profile only once. *Id*. at 105.

After the State rested its case, Richardson testified in his own defense. He asserted that he had previously been shot in his right arm, which caused permanent nerve damage. ECF 9-2 at 148-49. Richardson attempted to explain why his DNA was recovered from the television:

> Well, that all came about, Regina is a friend of mine and she called me. I was in the house. She called me on the house phone because I wasn't answering my cell phone or whatnot. And I knew the Laurel area or whatever, and I went out there and I didn't see nobody. And then she appeared with two other gentlemen with a large TV. I don't know what inch it was or whatever. But I tried to help put it in my car, but my car is small and I cut my -- my thumb on the metal part of the TV. I guess there was this thing. And she said it was broke, so I - we eventually just threw it on the side on the road waiting for, I guess, trash to pick it up or something, and we went home.

ECF 9-2 at 149.

On April 9, 2015, the jury returned guilty verdicts on the charges of first-degree burglary, robbery, robbery with a dangerous weapon, reckless endangerment, theft of property valued from $1,000 to under $10,000, and conspiracy to commit robbery with a dangerous weapon. ECF 9-3 at 15-17. Richardson was acquitted on charges of second-degree assault, use of a handgun in the commission of a felony, and use of a handgun in the commission of a crime of violence. *Id*. On May 8, 2015, Richardson was sentenced to an aggregate of 20 years' imprisonment. ECF 9-4 at 17-19.

Richardson appealed the jury's verdict to the Maryland Court of Special Appeals, alleging trial court error in denying a *Batson* challenge. ECF 7-1 at 41; *see* ECF 9-1 at 109-10; 116-17 (transcript of *Batson* challenge). *See also Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (declaring it is a violation of the Fourteenth Amendment's Equal Protection Clause for a party to exclude potential jurors from service solely on the basis of their race). The appellate court found no error by the trial court, concluding that the proffered reasons for the State's peremptory challenge to one female African American potential juror were race neutral. ECF 7-1 at 49-52.

Richardson's claims in his post-conviction petition and in the petition filed with this Court are identical. ECF 1-2 at 2, 6; ECF 7-1 at 59-61. He alleges trial counsel rendered ineffective assistance of counsel when he failed to object to Golas providing unqualified expert testimony and to legally inconsistent verdicts. *Id*. Each claim, together with the post-conviction court's analysis, is examined below.

## II.     Standard of Review

This court may grant a petition for a writ of habeas corpus only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 1 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009), the Court said: "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

"The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 576 U.S.

257, 276 (2015) (internal quotation marks and citations omitted). In *Nicolas v. Atty. Gen. of Maryland*, 820 F.3d 124, 129 (4th Cir. 2016), the Fourth Circuit explained (citing 28 U.S.C. § 2294(d)):

> The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a federal court reviewing a habeas petition that has already been adjudicated on the merits in state court to give considerable deference to the state court decision. A federal court may not grant habeas relief unless the state court arrived at "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

This Court "must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence," and this court "cannot disturb the state court's ruling simply because it is incorrect; it must also be unreasonable." *Nicolas*, 820 F.3d at 129; *see also Harrington v. Richter*, 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell,* 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

For a state court's decision to be contrary to established federal law, the state court must have arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or must have confronted facts that are "materially indistinguishable from a relevant Supreme Court" case but nevertheless arrived at the opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014); *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005). Notably, a federal court "may not issue the writ simply because [the court] concludes in its independent judgment that the relevant state-court decision applied established

7

federal law erroneously or incorrectly." *Lovitt*, 403 F.3d at 178 (quoting *Williams*, 529 U.S. at 411). Rather, the state court's application of federal law must be unreasonable, not merely incorrect. *Id.*; *see Barnes*, 751 F.3d at 238-39 (state court's decision is an unreasonable application of clearly established federal law when the state court identifies the correct governing principle but unreasonably applies that principle to the facts).

Under section 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* This standard was "meant to be" one that is "difficult to meet . . . ." *Richter*, 562 U.S. at 102.

### III.   Discussion

#### A.   Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ____ U.S. ____, 137 S. Ct. 759, 775 (2017); *United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019). Ineffective assistance of counsel is a well recognized basis for post-conviction relief. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017);

8

*United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Richter*, 562 U.S. at 104; *Powell*, 850 F.3d at 149. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court has made clear that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. In *Padilla*, 559 U.S. at 371, the Court said: "Surmounting *Strickland's* high bar is never an easy task." Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," *Richter*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. However, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d

987, 991 (4th Cir. 2015).  This is because failure to satisfy either prong is fatal to a petitioner's claim.  As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Strickland*, 466 U.S. at 697.

### B. Failure to Object to Unqualified Expert Testimony

In Richardson's first claim of ineffective assistance of counsel, he asserts that his trial counsel should have objected to Detective Golas's unqualified expert testimony.  ECF 1-2 at 2-6.

Richardson argues that the evidence used to connect him to the crimes was introduced by the State through Golas's testimony about Mr. Nyambi's credit card being used to make purchases on Zappos.com and through his testimony regarding cell phone records that showed "a phone recovered from Mr. Richardson's car was in regular contact with Ms. Jenkins' phone leading up to the robbery."  *Id*. at 3.  During his testimony, Golas "failed to state exactly how he was able to trace the IP address [where the Zappos order originated] to Verizon."  *Id*. at 4.  Further, Richardson complains about Golas's testimony regarding the text messages between the phone belonging to Ms. Jenkins and the other phone found in Richardson's car.  *Id*.  In Richardson's view, Detective Golas's testimony should have been subject to Maryland's rule for expert testimony, Md. Rule 4-263(b)(4) and amounted to improper opinion testimony by a lay witness.  ECF 1-2 at 4-5.

The post-conviction court first rejected Richardson's claim that counsel was ineffective by failing to object to Golas's testimony regarding cell phone communications between Richardson and Jenkins because it involves "no special knowledge or skill is required to read into evidence a number of calls and texts between certain phone numbers from records."  ECF 7-1 at 59.  The court reviewed relevant, controlling Maryland law and concluded that there was no basis for finding that "simply reading from cell phone records regarding how many calls and texts were sent back and forth between numbers requires an expert."  *Id*.  With respect to this portion of

Richardson's claim, the post-conviction court found that counsel's performance was not deficient or prejudicial. *Id*.

With regard to trial counsel's failure to object to Golas's testimony about the IP addresses, the post-conviction court found that counsel was deficient, as trial counsel "testified at the post conviction hearing that he, himself, does not know what an IP address is." ECF 7-1 at 60. The post-conviction court observed that Golas's testimony that "each IP address is unique" is information which is "not necessarily something a lay person would know without specialized knowledge, training or education." *Id*. The court disagreed with trial counsel's hypothesis that had Golas been qualified as an expert witness, his testimony might have been give greater weight by the jury. *Id*.

Nevertheless, Richardson's claim was rejected by the post-conviction court under *Strickland's* prejudice prong. ECF 7-1 at 60-61. The court observed, ECF 7-1 at 61:

> Petitioner suffered no prejudice as the result of trial counsel's failure to object to the detective's testimony regarding the IP address. At the post conviction hearing, trial counsel testified that in his 35 years of criminal practice, the case against the Petitioner was one of the "most overwhelming" he had ever seen. The court agrees that the evidence against the Petitioner was overwhelming: 58 text messages between the Petitioner and the victim's fiancée leading up to the incident, two ski masks and three cell phones found in Petitioner's car shortly after the incident, two watches found in Petitioner's house that the victim identified as his, a gun found in Petitioner's house that the victim identified as the gun that was held to his head during the incident, the purchase on Zappos.com using the victim's credit card that was traced to Petitioner's home address, and the Petitioner's blood and DNA found on the television taken from victim's apartment.

The post-conviction court's determination of the facts and application of well-established law is without error and must be left undisturbed by this court. Federal habeas relief is denied as to Richardson's first claim.

### C. Inconsistent Verdicts

Richardson's second claim concerns his assertion that the jury's verdicts were legally inconsistent. ECF 1-2 at 6-8. He argues that because he was acquitted of first-degree assault and two counts involving use of a firearm, but was convicted of armed robbery, the verdicts were inconsistent, requiring trial counsel to lodge an objection. *Id*. at 6. Richardson further explains that "where the only alleged weapon used is a gun, 'first-degree assault is a lesser included offense of robbery with a dangerous and deadly weapon.'" *Id*. (quoting *Morris v. State*, 192 Md. App. 1, 40, 993 A.2d 716 (2010)). Richardson relies on Maryland law that requires a jury instruction requiring resumption of deliberation upon delivery of a legally inconsistent verdict if counsel properly and timely objects to the verdict. ECF 1-2 at 7-8 (citing *McNeal v. State*, 426 Md. 455, 458, 44 A.3d 982 (2012)).

The post-conviction court first noted that Maryland law distinguishes between legally inconsistent verdicts and factually inconsistent verdicts, with the former being prohibited and the latter permitted. ECF 7-1 at 62-63. The court noted that legally inconsistent verdicts were not prohibited until 2008, when the Maryland Court of Appeals issued an opinion in *Price v. State*, 405 Md. 10, 35, 949 A.2d 619 (2008). ECF 7-1 at 62.

A legally inconsistent verdict was defined by Maryland's highest court as "'one where the jury acts contrary to the instructions of the trial judge with regard to the proper application of the law.'" *McNeal*, 426 Md. at 458, 44 A.3d at 984 (citation omitted). Factually inconsistent verdicts are, by contrast, "illogical verdicts where the jury convicts the defendant of one charge but acquits of another where the charges have common facts but distinct legal elements." ECF 7-1 at 62. The court then concluded that the verdict in Richardson's case was not legally inconsistent, observing, ECF 7-1 at 63-65 (footnote omitted):

Petitioner is incorrect in contending that the not guilty findings on the handgun charges create a legally inconsistent verdict. The verdict is factually inconsistent. In 2013, the Court of Special Appeals held that the "[u]se of a handgun that meets the statutory criteria is a sufficient, but not necessary predicate for a conviction of … armed robbery." *Teixeira v. State*, 213 Md. App. 664, 682, 75 A.3d 371, 381 (2013). If use of a "handgun" is not required in the offense, the verdict would be a factually inconsistent verdict. *Id.* at 681, 75 A.3d at 381. The court stated that "the jurors could well have decided that [a defendant] had not employed a handgun that met the definition of 'firearm,' but instead another dangerous weapon …." *Id.* at 682, 75 A.3d at 381. This is a factual issue left to the jury to decide as finders of fact, not a situation where they failed to follow legal instructions. Therefore, trial counsel, in the case sub judice was not ineffective in failing to object to the factual inconsistency related to the handgun charges in this verdict.

Petitioner is also incorrect in stating that there was a legal inconsistency in the verdict with respect to first degree assault. Although first degree assault can merge into armed robbery for sentencing purposes, that is not always the case. If the two charges are based on separate and distinct acts, they will not merge. *Morris v. State*, 192 Md. App. 1, 44, 993 A.2d 716, 741 (2010). Thus, in order for Petitioner to be found guilty of armed robbery, he does not have to be found guilty of first degree assault. The two crimes consist of at least one distinct legal element. First degree assault requires proof of all the elements of second degree assault, plus an intent to cause serious physical injury in the commission of the assault or using a firearm to commit the assault. Md. Code, Crim. Law §3-202. Armed robbery includes committing or attempting to commit robbery with a deadly or dangerous weapon; the deadly or dangerous weapon must, under the circumstances of the case, be immediately useable to invoke serious or deadly harm. *Brooks v. State*, 314 Md. 585, 600, 552 A.2d 872, 880 (1989). However, armed robbery does not require that the dangerous weapon be a gun. The theory of first degree assault relied upon by the State required the jury to find that the Defendant had used a firearm to commit the assault. The jury clearly did not so find. In light of the distinct elements of these crimes, Petitioner is incorrect that the jury's failure to find Petitioner guilty or not guilty on both armed robbery and first degree assault constitutes a legally inconsistent verdict. It is legally plausible for a defendant to be found guilty of armed robbery and not guilty of first degree assault and/or use of a firearm in commission of a crime of violence. Under the circumstances of this case, if inconsistent at all, the verdict is factually, not legally, inconsistent. Although a trial court can re-instruct the jury regarding the inconsistency and the range of acceptable verdicts when the verdict is timely objected to as legally inconsistent, *Hicks v. State*, 189 Md. App. 112, 129, 984 A.2d 246, 256 (2009) (quoting *Price*, 405 Md. at 40-42, 949 A.2d at 619), this is not so when the verdict is factually inconsistent.

After concluding that trial counsel's performance was not deficient for failing to object to the verdicts in Richardson's case, the post-conviction court also found that, "[e]ven had the jury's verdict in this case been legally inconsistent, this court could not find that the prejudice prong has been satisfied." ECF 7-1 at 65. The post-conviction court explained, *id.*:

> As Judge Harrell noted in his concurring opinion in *Price*, more often than not, it is the Defendant who is the beneficiary of the jury's inconsistency. *Price v. State*, 405 Md. at 40, 949 A.2d at 637 (2008) (Harrell, J., concurring). This is exactly what happened here. Trial counsel testified at the post conviction hearing that in light of the overwhelming evidence against the Petitioner he considered the overall verdict a victory and a win for his client. A review of the evidence confirms trial counsel's opinion that it was quite substantial. The jury verdict acquitted the Petitioner of four of the ten charges. As Petitioner admits, a challenge to the verdict could have resulted in additional convictions. Trial counsel's decision not to challenge the favorable verdict in light of the overwhelming evidence was sound trial strategy, and as a result, Petitioner has also failed to satisfy the prejudice prong of the *Strickland* test.

In presenting this claim to this court, Richardson fails to identify a Supreme Court case that the post-conviction court's reasoning either contravened or unreasonably applied. In the absence of such a circumstance, federal habeas relief must be denied. *See Richter*, 562 U.S. at 103. Violation of a state law which does not infringe upon a specific constitutional right is cognizable in federal habeas corpus proceedings only if it amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir. 1978) (quoting *Hill v. United States*, 368 U. S. 424, 428 (1962)), *cert. denied*, 440 U. S. 937 (1979). Having found no basis for federal habeas relief in this asserted ground, the petition is also denied as to this claim.

### D.     Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.*

Richardson has failed to satisfy this standard on any of his claims. Therefore, a certificate of appealability shall not issue.

### E.  Conclusion

For the foregoing reasons, the court will deny Richardson's petition for writ of habeas corpus and decline to issue a certificate of appealability. A separate order follows.


    August 11, 2021                                                            /s/
Date                                                                   Ellen L. Hollander
                                                                        United States District Judge